STATE of Wisconsin, Plaintiff-Respondent,

v.

Jerry L. PARKER, Defendant-Appellant.†

Court of Appeals

*No. 01–2721–CR. Submitted on briefs April 12, 2002.—Decided May 8, 2002.*

2002 WI App 159

(Also reported in 647 N.W.2d 430.)

† Petition to review denied 7-26-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Christopher W. Rose* of *Rose & Rose*, Kenosha.

■

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David J. Becker*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. SNYDER, J.   Jerry L. Parker appeals his judgment of conviction and a trial court order denying postconviction relief. Parker, citing *State v. Perry*, 136 Wis. 2d 92, 401 N.W.2d 748 (1987), argues that the trial court erred when it denied his request for a new trial after potentially exculpatory evidence, an audiotape of an alleged drug buy, was destroyed. We reject Parker's arguments, concluding that the principles of *Perry*, a missing transcript case, are inapplicable here. We therefore affirm the judgment of conviction and the order denying postconviction relief.

## FACTS

¶ 2.   Parker was convicted of delivery of marijuana after a November 22, 1999 jury trial and on July 13, 2000, was sentenced to fifty-four months in prison. On July 19, 2000, Parker filed a notice of intent to pursue postconviction relief.

¶ 3.   On May 7, 2001, Parker filed a postconviction motion requesting a new trial. As grounds for this motion, Parker asserted that his appellate counsel had learned that there had been a tape of the alleged drug transaction between Parker and an undercover police detective, Louis Perri, that had not been used at trial. Neither the State nor Parker introduced the tape as evidence at trial, although Parker himself did make a brief reference to it in his own testimony. At trial, the only witnesses other than Parker were Perri and a chemist.

156

¶ 4. Parker claimed that this tape would have constituted exculpatory evidence because the tape demonstrated that a drug transaction may not have occurred. Appellate counsel contacted the district attorney's office and asked it to forward the tape to him; however, the district attorney's office informed appellate counsel that the tape in question had been destroyed. Parker argued that the destruction of this tape essentially deprived him of his right to appeal and his right to effective assistance of appellate counsel.

¶ 5. A hearing was held on this motion on September 19, 2001. Parker called his trial attorney to testify at this hearing. Trial defense counsel testified that there had been a body wire tape regarding the drug transaction, that the tape had been made available to him prior to trial and that he had listened to the tape with Parker. At the postconviction hearing, Parker's trial defense counsel testified to the contents of the tape:

Q: And after listening to that body wire tape, what, if anything, did you hear on that?

A: As best of my recollection, you could hear a conversation. You could also hear music in the background which blocked out . . . some of the conversation. So, there was interspersed audible conversation between Mr. Parker and I believe Detective Perry, [sic] and music that I think drowned out some of the — some other parts of the conversation.

Q: But you can hear some of the conversation, is that correct?

A: That's correct.

Q: And what, if any, conversation could you hear?

A: Again, to the best of my recollection, I could hear discussions regarding cocaine. Other than that, that's all I can recall hearing on the tape.

157

Q: When you say hearing discussions regarding co-caine, what discussions?

A: As best I can remember, I believe had Mr. Parker had the ability to obtain any or not.

Q: All right. Now, did you hear any other discussions other than that on that body wire tape?

A: No.

Q: Did you hear any discussions regarding any other type of drug transaction?

A: No.

¶ 6. The trial court concluded that *Perry* was inapplicable. Parker's appellate counsel pointedly did not allege ineffective assistance of counsel, according to the trial court, which further determined that Parker's trial defense counsel had made a purposeful decision, with Parker's consent, not to introduce the tape into evidence. On September 21, 2001, the trial court denied Parker's request for a new trial. Parker appeals.

## DISCUSSION

¶ 7. Parker argues that the trial court erred in denying his request for a new trial when the evidence destroyed, here the audiotape of the alleged drug buy, contained potentially exculpatory evidence. Parker argues that the destruction of this evidence denies him his due process right to a meaningful appeal and to the effective assistance of appellate counsel.

■

¶ 8. Neither party provides this court with a standard of review to evaluate the trial court's decision on Parker's motion for a new trial; however, Parker's

arguments are grounded in constitutional principles. The application of constitutional principles to the facts is a question of law that we decide de novo without deference to the trial court's decision. *State v. Fields*, 2000 WI App 218, ¶ 9, 239 Wis. 2d 38, 619 N.W.2d 279.

¶ 9. Parker argues that the holding of *Perry* requires a new trial here. *Perry* addressed the denial of a defendant's right to appeal and his or her consequent entitlement to a new trial when a significant portion of the trial transcript is missing. *Perry*, 136 Wis. 2d at 94, 99. Pursuant to *Perry*, a missing transcript that cannot be re-created entitles the defendant to a new trial if the defendant demonstrates a "colorable need" for the transcript. *Id.* at 108.

¶ 10. The *Perry* court emphasized the importance of transcripts, citing to Wis. Stat. Rule 809.16(5), which provides sanctions for failure to file a timely transcript, and Supreme Court Rule 71.01, which mandates that all testimony in all courts of record be recorded verbatim. *Perry*, 136 Wis. 2d at 98–99. An accurate and complete transcript of a criminal case ensures a meaningful right to appeal and the failure to provide such a transcript can "prevent[] a putative appellant from demonstrating possible error," thereby depriving him or her of the constitutional right to appeal. *Id.* at 99.

¶ 11. Parker's reliance on *Perry* is misplaced. *Perry*'s concern is the protection of a defendant's right to a meaningful appeal by assuring a defendant's access to a full and complete transcript of the trial. *Id.* Here, however, we address the destruction of an audiotape that was provided to the defendant prior to but never utilized at trial. The import of such a tape and the import of a trial transcript cannot be equated.

¶ 12.   Providing a defendant a full transcript guarantees that the defendant has the opportunity to analyze the proceedings of the trial court and to challenge any errors. *State v. Raflik*, 2001 WI 129, ¶ 31, 248 Wis. 2d 593, 636 N.W.2d 690. But again, the tape here was never made a part of the trial court record by Parker or the State. In deciding whether an error warrants a new trial, we are limited to the record of the proceedings in the trial court and the appellate record cannot be enlarged by materials which were not made part of the record in the trial court. *Verex Assurance, Inc. v. AABREC, Inc.*, 148 Wis. 2d 730, 734 n.1, 436 N.W.2d 876 (Ct. App. 1989). *Perry* has never been extended to cover the destruction of or absence of items not a part of the trial court proceedings.

¶ 13.   That said, the parties have not cited to, nor have we located, any case law addressing the posttrial destruction of evidence. There is a long line of cases addressing the pretrial destruction of evidence and a defendant's due process rights. We see no reason why this line of cases should not apply to the situation at hand.

¶ 14.   A defendant's due process rights are violated by the destruction of evidence (1) if the evidence destroyed was apparently exculpatory and of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means; or (2) if the evidence was potentially exculpatory and was destroyed in bad faith. *State v. Noble*, 2001 WI App 145, ¶ 17, 246 Wis. 2d 533, 629 N.W.2d 317, *rev'd on other grounds*, 2002 WI 64, 253 Wis. 2d 206, 646 N.W.2d 38 (Wis. June 21, 2002) (No. 99–3271–CR).

¶ 15.   Neither condition is present here. The tape can hardly be said to be "apparently exculpatory." Both Parker and his trial defense counsel reviewed the tape and declined to introduce it as evidence. The inescapable conclusion is that the tape was not "apparently exculpatory." A defendant may not sit back while evidence is available and then argue for a new trial on the grounds that evidence is no longer available to him or her. *See State v. Holt*, 128 Wis. 2d 110, 134, 382 N.W.2d 679 (Ct. App. 1985).

¶ 16.   Furthermore, according to trial defense counsel's recollection, the contents of the tape were consistent with the testimony presented at trial. Perri testified that he initially attempted to buy cocaine from Parker but that Parker could not obtain any cocaine. Parker himself testified at trial that Perri attempted to purchase cocaine from him but he was not able to obtain any to sell to him. Parker also testified that during his encounter with Perri, they were listening to music. At the postconviction hearing, trial defense counsel testified that much of the conversation was drowned out by music. He further testified that he heard discussions about cocaine and whether Parker had the ability to obtain any.

¶ 17.   In addition, the tape was not "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Noble*, 2001 WI App 145 at ¶ 17. Both Parker and trial defense counsel testified as to the tape's contents. Between Parker and trial defense counsel, with the recollection of law enforcement who listened to the tape as well, the contents of the tape could be effectively reconstructed.

¶ 18. Neither is the second alternative present here: potentially exculpatory value accompanied by bad faith by the government. *Id.* Assuming without deciding that the tape was in fact potentially exculpatory, there is not even a hint of bad faith by the State. Parker has not suggested, let alone established via evidentiary proof, that the tape was destroyed in bad faith. Put simply, the destruction of this audiotape does not warrant a new trial.

## CONCLUSION

¶ 19. The principles of *Perry* do not apply to an audiotape provided to defense prior to trial, never presented as evidence during trial and destroyed posttrial. Utilizing the standards for a new trial based on the pretrial destruction of evidence, the tape was not apparently exculpatory nor of such a nature that Parker would be unable to obtain comparable evidence by other reasonable means. Even assuming the tape was potentially exculpatory, there is no allegation or evidence that the tape was destroyed in bad faith. We therefore affirm the judgment of conviction and order denying Parker's motion for a new trial.

*By the Court.*—Judgment and order affirmed.