**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 24, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1539-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CT363

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

ROGER A. WOLF, JR.,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Wood County: GREGORY J. POTTER, Judge. *Affirmed*.

¶1 NASHOLD, J.[1] Roger Wolf appeals a judgment of conviction for operating with a prohibited alcohol concentration, third offense. Specifically, he challenges the circuit court's order denying his motion to suppress, arguing that

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

the arresting officer did not have probable cause to "administer" a preliminary breath test (PBT)[2] and that the court's denial of his motion was based on an error of law. I disagree and therefore affirm.

## BACKGROUND

¶2      The State charged Wolf with operating while intoxicated (OWI) and operating with a prohibited alcohol concentration, both as third offenses. *See* WIS. STAT. § 346.63(1). Wolf filed motions to suppress, arguing that the arresting officer lacked probable cause to request a preliminary breath test. The circuit court held a motion hearing at which the arresting officer testified to the underlying facts, as follows.[3]

¶3      On September 23, 2020, at approximately 12:49 a.m., the officer was dispatched to a motorcycle accident involving a deer. A citizen initially reported to dispatch that a male subject had crashed and was unconscious on the roadway, but as the officer was responding, the reporting party stated that the male subject had gotten up.

---

[2] Wolf discusses whether the officer had probable cause to "administer" a PBT rather than to "request" a PBT as provided in WIS. STAT. § 343.303. *See* § 343.303 (an officer having probable cause to believe a person has violated WIS. STAT. § 346.63(1) "may request the person to provide a sample of his or her breath for a preliminary breath screening test using a device approved by the department for this purpose"). To the extent that Wolf's use of the word "administer" means to suggest that the PBT was not requested or voluntary, neither the circuit court's findings nor the record support that argument, as discussed further in footnote 5. Moreover, Wolf raised this argument in the circuit court, and the court explicitly rejected it, concluding that the PBT was consensual. Wolf does not renew this argument on appeal. Thus, this opinion will refer to the officer's "request" that Wolf take a PBT rather than to the officer "administering" the PBT.

[3] Excerpts from the officer's bodycam video were played at the suppression hearing but were not made part of the appellate record. Given the undisputed facts, however, I have determined that review of the bodycam video is not necessary to decide this case.

¶4     When the officer arrived at the scene of the accident, the reporting party told the officer that while he was driving, he observed a headlight coming toward him but then noticed that the headlight had disappeared. He then came across a person later identified as Wolf lying on the ground. The reporting party did not indicate that Wolf had engaged in any erratic or unsafe driving.

¶5     The officer contacted Wolf, who was conscious and standing up. The officer noticed that Wolf's head was bleeding and that an odor of intoxicants was coming from Wolf as he spoke. Wolf told the officer that he had "been drinking all day." The officer observed that Wolf's "pants in the crotch region were wet, as it appeared maybe [he] possibly urinated himself." The officer also observed a deer carcass at the accident scene and there is no dispute that Wolf hit a deer.

¶6     The officer did not testify or note in his report that Wolf had bloodshot eyes or slurred speech. The officer testified that, although it was common during OWI investigations to note whether a suspect has bloodshot eyes or slurred speech, he usually avoided reporting such observations when there was an accident involving a head injury because "a head injury can obviously impact what I'm seeing and why that's there."

¶7     When the officer asked Wolf what happened, Wolf responded that he was "not sure." Wolf also told the officer that he was a passenger on the motorcycle. When the officer asked Wolf who he was riding with, Wolf responded that he did not know the man's name. The officer questioned Wolf "multiple times" about the passenger and Wolf "insisted that he was riding, not operating, and that he was with a person on the bike that he could not identify." The officer observed that the motorcycle was a single-seat motorcycle and no

other operator or passenger of the motorcycle was present. The motorcycle was registered to Wolf.

¶8    Prior to the officer's request that Wolf take a PBT, the officer was informed through dispatch that Wolf had one prior OWI conviction; however, following Wolf's arrest, the officer learned that Wolf actually had two prior OWI convictions.

¶9    Wolf was placed in an ambulance. The officer also entered the ambulance, and while Wolf was lying on the ambulance bed, the officer asked Wolf if he would take a PBT. The officer testified that Wolf was engaged in a conversation with a paramedic at that time and did not appear to hear the officer's request. The circuit court found that when Wolf subsequently turned his head toward the officer, the officer placed the PBT near Wolf's mouth and "asked" Wolf, "'[Y]ou want to blow into this straw for me[?] I'll tell you when to stop.'"[4] Wolf did not verbally respond but placed his lips around the tube and began blowing into it. Wolf "had to blow multiple times when the initial attempt was unsuccessful." Ultimately, the PBT showed a result of .118.

---

[4] The circuit court made this finding as to what the officer "asked" Wolf, indicating that it was a quote from the officer. Because the officer did not testify as to his precise words, the court's finding is evidently taken from the bodycam video, which, as stated in footnote 3, was played at the hearing but was not made part of the appellate record. The court's finding that the officer "asked" Wolf this question is consistent with the testimony of the officer, who when asked at the suppression hearing by defense counsel if he "basically put the PBT device up to [Wolf's] lips and t[old] him to blow," responded, "I said will you blow into this tube." Wolf does not argue that the court's finding is clearly erroneous but instead characterizes what occurred as follows: "[The officer] placed the PBT in front of Mr. Wolf's mouth and told him to provide a breath sample." The portion of the record Wolf cites for his assertion does not support this characterization.

¶10 Following the suppression hearing and submission of the parties' written arguments, the circuit court issued an oral ruling denying Wolf's motion to suppress. Wolf later pled guilty to operating with a prohibited alcohol concentration, third offense. He now challenges on appeal the court's order denying his motion.

## DISCUSSION

¶11 Wolf argues that the circuit court erred in denying his motion to suppress the PBT result because the officer lacked probable cause to request a PBT as required by WIS. STAT. § 343.303 and because the court's determination was based on an error of law.[5] He further argues that, without the PBT result, there was not probable cause for his arrest. For the reasons that follow, Wolf's arguments are unpersuasive.

¶12 When reviewing the denial of a motion to suppress evidence, this court will uphold the circuit court's findings of fact unless they are clearly erroneous. *State v. Eckert*, 203 Wis. 2d 497, 518, 553 N.W.2d 539 (Ct. App. 1996); WIS. STAT. § 805.17(2). Whether those facts satisfy the statutory standard

---

[5] Wolf also appears to argue that, because the officer lacked probable cause to request a PBT, Wolf's Fourth Amendment rights were violated. Wolf does not develop an analysis based on the Fourth Amendment and I therefore decline to consider it. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). I note that any such argument would necessarily be premised on the assumption that the PBT in this case was not voluntary, an argument that, as previously stated, Wolf likewise does not develop and is not supported by the record. *See also County of Jefferson v. Renz*, 231 Wis. 2d 293, 311 n.14, 603 N.W.2d 541 (1999) (noting defendant's argument that the PBT is a warrantless search and seizure, but further observing that "consent is an established exception to the warrant and probable cause requirements" and concluding that "[s]ince the defendant in this case consented to submit to the PBT, we need not reach this issue").

of probable cause is a question of law this court reviews de novo. *State v. Ellenbecker*, 159 Wis. 2d 91, 94, 464 N.W.2d 427 (Ct. App. 1990).

¶13　Pursuant to WIS. STAT. § 343.303, an officer may request a PBT if the officer has "probable cause to believe that the person" has operated a motor vehicle while intoxicated or with a prohibited alcohol concentration. As used in § 343.303, "probable cause" is "a quantum of proof greater than the reasonable suspicion necessary to justify an investigative stop, and greater than the 'reason to believe' that is necessary to request a PBT from a commercial driver, but less than the level of proof required to establish probable cause for arrest." *County of Jefferson v. Renz*, 231 Wis. 2d 293, 316, 603 N.W.2d 541 (1999). "An officer may request a PBT to help determine whether there is probable cause to arrest a driver suspected of OWI, and the PBT result will be admissible to show probable cause for an arrest, if the arrest is challenged." *Id.*

¶14　"In determining whether probable cause exists, this court applies an objective standard." *State v. Kutz*, 2003 WI App 205, ¶12, 267 Wis. 2d 531, 671 N.W.2d 660. "Probable cause is a flexible, common-sense measure of the plausibility of particular conclusions about human behavior." *State v. Felton*, 2012 WI App 114, ¶9, 344 Wis. 2d 483, 824 N.W.2d 871 (internal quotation marks and quoted source omitted). "The question of probable cause must be assessed on a case-by-case basis, looking at the totality of the circumstances." *State v. Lange*, 2009 WI 49, ¶20, 317 Wis. 2d 383, 766 N.W.2d 551.

¶15　I agree with the circuit court that the officer had probable cause to request the PBT based on the following information that the officer was aware of at the time he requested the PBT:

- Wolf told the officer he had been "drinking all day";

- Wolf smelled of alcohol;

- Wolf was involved in a traffic accident in which he hit a deer;

- the accident occurred at approximately 12:49 a.m.;

- Wolf told the officer that he was not sure what had happened;

- Wolf told the officer that he was a passenger on the motorcycle but did not recall the operator's name;

- the motorcycle was a one-seater and no other operator or passenger was at the scene of the crash;

- the motorcycle was registered to Wolf; and

- Wolf had a prior OWI conviction.

¶16     Wolf offers potentially innocent explanations for several of these facts. For example, he states that Wisconsin experiences many traffic accidents involving deer and that the majority of those accidents do not involve alcohol. He also attempts to mitigate the significance of the odor of alcohol on his breath and his statement that he had been "drinking all day" by noting that it is not illegal to operate a motor vehicle after drinking alcohol and that the officer did not ask Wolf further questions regarding his statement that he had been drinking all day, such as "what types of beverages he was consuming, when he consumed them, what size they were, [or] the recency of his last drink." He further notes that neither the officer nor the reporting party observed Wolf engage in any erratic or unusual driving, and that the officer only *believed* that what he observed on Wolf was urine and that, even if it was urine, it could have been caused by either Wolf losing consciousness or by a bladder injury resulting from the crash. He also asserts that his inability to name the other person on the motorcycle could have been caused by his head injury, especially given the officer's testimony that head injuries can sometimes create confusion.

¶17 However, "an officer is not required to draw a reasonable inference that favors innocence when there also is a reasonable inference that favors probable cause." *State v. Nieves*, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125. Moreover, even taking into account that one or more of the facts could have a non-OWI-related explanation, the totality of the circumstances are sufficient to constitute probable cause for the officer's PBT request, as demonstrated by our case law.

¶18 For example, in *Renz*, our supreme court concluded that the officer had probable cause to request a PBT where the defendant's vehicle smelled strongly of alcohol, he admitted to drinking three beers earlier in the evening and exhibited several clues supporting intoxication during field sobriety tests but he was able to "substantially complete all of the tests" and did not exhibit slurred speech. *Renz*, 231 Wis. 2d at 316-17. The court observed that the purpose of the PBT is "to help determine whether there are grounds for arrest." *Id.* at 304. The court noted that, given the defendant's mixed results, the officer was in an ambiguous area between reasonable suspicion to stop and probable cause for an arrest, which justified requesting the PBT. *Id.* at 316-17. The court concluded that "[t]he officer was faced with exactly the sort of situation in which a PBT proves extremely useful in determining whether there is probable cause for an OWI arrest." *Id.* at 317.

¶19 Opinions from this court likewise support the conclusion that the officer in this case had probable cause to request a PBT from Wolf. For example, in *Felton*, this court determined that, even though the defendant "successfully completed all of the properly administered field-sobriety tests," the officer had probable cause to request a PBT based on the defendant's glassy and bloodshot eyes, the odor of alcohol on his person, his admission to drinking, his "'staying too

long at one stop sign and then completely blowing another,'" and his prior convictions for operating while intoxicated. *Felton*, 344 Wis. 2d 483, ¶¶9-10.

¶20 Further, in *State v. Tadych*, No. 2009AP1911-CR, unpublished slip op. (WI App Jan. 20, 2010),[6] the court determined that the officer had probable cause to request a PBT based on the defendant's involvement in a rollover accident, which the defendant said was caused by swerving to avoid a deer; the "slight odor of intoxicant" on the defendant's breath; and his statement that he had consumed alcohol but "stopped drinking" at 1:30 a.m., approximately three hours before the officer was dispatched to the accident. *Id.*, ¶¶4, 9, 12. Notably, the court rejected the defendant's argument that the officer lacked probable cause because the officer "failed to notice any speech impairment, bloodshot eyes, [or] incoherence, and lacked any knowledge as to how much alcohol he had consumed." *Id.*, ¶9.

¶21 Also, in *State v. Litke*, No. 2013AP1606-CR, unpublished slip op. (WI App Mar. 11, 2014), the court determined there was probable cause for the PBT request based on the defendant's driving late on a Friday night without the required illuminated headlights; his initial refusal to look at the officer and his bloodshot and glassy eyes when he finally did so; his admission to consuming alcohol at a fish fry several hours before the stop and again while at a bowling alley; and the fact that in performing the one-leg-stand test, he wobbled slightly and raised his arms from his side in order to keep his balance. *Id.*, ¶17.

---

[6] Both this opinion and the opinion next discussed are authored, unpublished, one-judge opinions, cited for their persuasive value pursuant to WIS. STAT. RULE 809.23(3)(b).

¶22  Significantly, Wolf does not provide any authority concluding that law enforcement lacked probable cause to request a PBT in circumstances analogous to those in the instant case. Accordingly, and consistent with *Renz* and this court's prior decisions, I conclude that the officer in this case had the requisite probable cause to request a PBT from Wolf.

¶23  Wolf next argues that the circuit court's order denying his suppression motion should be reversed because it was based on an error of law. Specifically, he argues that the court erroneously concluded that an accident coupled with an odor of alcohol supports a probable cause determination. I reject this argument.

¶24  Wolf relies on the following statement by the circuit court: "[T]he case law is clear in that … when there is an accident coupled with an odor of alcohol, that's sufficient for a finding of probable cause." However, the court's analysis did not end there. Instead, the court went on to state: "Then you couple that with the fact that [Wolf] himself made the admission that he had been drinking all day, [and] that definitely puts it over the threshold." Thus, even assuming that the court was incorrect in its initial statement that probable cause to request a PBT may be based solely on an accident and the odor of alcohol,[7] the court did not in fact base its probable cause determination solely on these two factors. Rather, the court also explicitly considered Wolf's statement that he had been drinking all day.[8]

---

[7] Wolf provides no authority establishing that the circuit court's statement constitutes an error of law.

[8] I also note that the circuit court made the following additional findings: the officer was dispatched at 12:49 a.m., the officer noticed the odor of intoxicants coming from Wolf's breath

(continued)

¶25 More importantly, however, any error of law by the circuit court in analyzing probable cause would not affect my decision in this case because, as noted above, this court's review of whether the facts support probable cause is de novo, based on an objective standard. Under this standard of review, I conclude that the officer had probable cause to request a PBT from Wolf.

¶26 Accordingly, I affirm the circuit court's order denying Wolf's motion to suppress and Wolf's judgment of conviction for operating a motor vehicle with a prohibited alcohol concentration.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

when he spoke, the officer observed that Wolf had "wet himself," and Wolf "did not know … whether he was the driver or passenger of the motorcycle, even though it was a one seat bike." It is reasonable to assume that these findings also factored into the court's analysis of probable cause.